UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Benfield Inc.,

      Plaintiff,      **MEMORANDUM OPINION
                    AND ORDER**
v.               Civil No. 07-2218 ADM/FLN

Aon Re, Inc.,

      Defendant.

___

Timothy R. Thornton, Esq., and Robin Caneff Gipson, Esq., Briggs & Morgan, P.A., Minneapolis, MN, argued on behalf of the Plaintiff.

Lawrence J. Field, Esq., and Arthur G. Boylan, Esq., Leonard, Street and Deinard, Minneapolis, MN, argued on behalf of the Defendant.

___

## I. INTRODUCTION

On November 2, 2007, the undersigned United States District Judge heard oral argument on Defendant Aon Re, Inc.'s ("Aon") Motion to Dismiss [Docket No. 26]. Plaintiff Benfield Inc. ("Benfield") asserts five counts in its Amended Complaint [Docket No. 20]: Count One, tortious interference with contract; Count Two, tortious interference with prospective business relations; Count Three, unjust enrichment; Count Four, conversion; and Count Five, unfair competition. For the reasons set forth herein, Aon's motion is granted on Counts One, Two, and Five. Aon's motion to dismiss Counts Three and Four is denied.

## II.  BACKGROUND[1]

Benfield is a Delaware corporation with its principal place of business in Bloomington, Minnesota.  Am. Compl. ¶ 1.  Aon is an Illinois corporation with its principal place of business in Chicago, Illinois.  Id. ¶ 2.  Benfield and Aon provide risk management services and broker reinsurance.  Id. ¶¶ 1-2.  In its capacity as a reinsurance broker, Benfield negotiates reinsurance contracts ("treaties") between an insurer who wants to lay off risk ("the cedent") and the reinsurer to whom the risk is ceded.  Id. ¶ 5.  Benfield engages in significant analysis and extensive negotiations in preparing the reinsurance proposals for presentation to potential reinsurers.  Id. ¶ 6.  Once a reinsurer expresses interest in the cedent's business, Benfield works with the parties to negotiate the terms of the treaties.  Id. ¶ 7.  Most of Benfield's work ends upon securing the reinsurance treaty.  Id. ¶ 8.  Benfield is typically compensated by retaining a commission when the cedent sends the reinsurance payments to Benfield, who then forwards the balance to the reinsurer.  Id. ¶ 9.

In 2000 and 2001, Benfield placed five treaties for St. Paul Companies ("St. Paul").  Id. ¶ 11.  The estimated value of the brokerage commissions for the treaties was $2,400,000.  Id. ¶ 14.  Before the treaties expired, St. Paul switched reinsurance intermediaries—moving its business from Benfield to Aon.  Id. ¶ 12.  Benfield concedes that St. Paul was free to change reinsurance brokers at any time.  Id. ¶ 18.  After switching reinsurance intermediaries, St. Paul began submitting the reinsurance premiums for all five treaties to Aon.  Id. ¶ 12.  Aon then extracted a commission.  Id.  Benfield contends that Aon wrongfully extracted commissions that were

---

[1] In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

earned by Benfield upon placement of the treaties.  Benfield filed this suit to collect commissions it claims were wrongfully retained by Aon.

### III.  DISCUSSION

**A.        Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm, 15 F.3d at 112; Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).  Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party.  Ossman, 825 F. Supp. at 880.  "A motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief."  Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief."  A pleading must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

**B.        Tortious Interference and Unfair Competition**

Resolution of the claims in Counts One, Two, and Five does not depend on whether the commission is earned at placement.  These three counts will be addressed first.

**1.      Count One—Tortious Interference With Contract**

A tortious interference with contractual relationship claim requires proof of: "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." Furley Sales & Assocs., Inc. v. N. Am. Auto. Warehouse, Inc., 325 N.W.2d 20, 25 (Minn. 1982).

In Count One of the Amended Complaint, Benfield contends that because it placed St. Paul's reinsurance treaties, it was entitled to full payment of the brokerage commissions for those treaties. Am. Compl. ¶ 15. Benfield contends that Aon knew Benfield was entitled to the commissions but intentionally and without justification collected the commissions and refused to remit payment to Benfield. Id. ¶ 16. Benfield contends that because of Aon's wrongful conduct, it was damaged in "an amount in excess of $75,000." Id. ¶ 17.

Aon asserts Count One of Benfield's Amended Complaint should be dismissed because Benfield failed to properly plead the required elements of a tortious interference with contract claim. Specifically, Aon contends that Benfield failed to allege the existence of a contractual relationship between itself and St. Paul or between itself and the reinsurers. Aon asserts that if Benfield's claim relates to the treaties between St. Paul and the reinsurers, the claim should be dismissed because Benfield is not a party to the treaties and thus lacks standing to claim tortious interference of contract regarding the treaties. Aon also asserts that Benfield failed to plead any breach and failed to plead that Aon's conduct was without justification. Aon asserts that it had a legitimate economic interest in the treaties and that because it performed work when it took over as the reinsurance broker, it was entitled to the commissions it extracted from the reinsurance payments. Aon summarizes its position regarding Count One as follows: "Because Benfield

does not allege a contract or its breach, and because Aon had a legitimate economic interest in working for commissions during the Aon Period, Benfield's claim for tortious interference with contract must be dismissed." Def.'s Mem. in Supp. of its Mot. to Dismiss [Docket No. 29] at 9.

In opposing Aon's motion, Benfield attempts to clarify its pleading by asserting that Aon interfered with its contractual relationship with St. Paul and its relationship with the reinsurers. To satisfy the pleading requirements of Rule 8(a) and Twombly, Benfield needed to allege sufficient facts to state a claim that is plausible on its face. Benfield has pled no facts concerning the existence of a contractual relationship either between itself and St. Paul or itself and the reinsurers. Regarding the asserted contractual relationship with St. Paul, Benfield asserts in its memorandum opposing Aon's motion that its relationship arose from the "broker of record" letter. Yet there is no mention of that document in its Amended Complaint, nor is the document part of the record of the case.

Further, even assuming Benfield plead facts making the existence of a contract between it and St. Paul or the reinsurers plausible, Benfield needed to proffer facts demonstrating that Aon intentionally procured the breach of a contract. Benfield has set forth no such facts. To the contrary, given that St. Paul was free to change brokers at any time, it seems more plausible that Aon did not procure any breach at all. Accordingly, Benfield's claim of tortious interference with contract is dismissed.

**2.     Count Two—Tortious Interference with Prospective Business Relationship**

A claim of tortious interference with prospective business relationship requires proof that the actor intentionally committed a wrongful act that improperly interfered with a prospective business relationship. United Wild Rice, Inc. v. Nelson, 313 N.W.2d 628, 633 (Minn. 1982)

(adopting the Restatement (Second) of Torts § 766B (1977)).  The interference may consist of "inducing or otherwise causing a third person not to enter into or continue the prospective relation," or "preventing the other from acquiring or continuing the prospective relation." Restatement (Second) of Torts § 766B.

In Count Two, Benfield asserts that brokerage commissions are earned upon placing the reinsurance treaties.  Am. Compl. ¶ 19.  Benfield asserts that when a cedent changes brokers before the expiration of a treaty, the placing broker has a "reasonable commercial expectation, [as] well as a contractual entitlement, to the full natural commission associated with the placement made by that broker prior to the mid-term account move." Id. ¶ 20.  Benfield contends that by extracting a commission from the reinsurance payment on the accounts it placed, Aon interfered with its "reasonable prospective business relations regarding the receipt of the full natural commission on the St. Paul placements." Id. ¶ 21.

Aon contends that Count Two of Benfield's Amended Complaint fails the pleading requirements of Rule 8(a) because Benfield failed to plead interference with a business relationship.  Aon also asserts that Benfield's claim fails to plead (1) that Aon wrongfully caused St. Paul to terminate its relationship with St. Paul; (2) that Benfield had a reasonable expectation of economic advantage given that St. Paul was free to change brokers at any time; (3) that Aon used wrongful or illegal means to induce St. Paul to change brokers; (4) and that Aon's actions in collecting the commissions and not remitting them to Benfield were without justification.

Benfield's Amended Complaint is unclear in identifying a prospective business relationship wrongfully interfered with.  However, in its memorandum, Benfield asserts that Aon wrongfully interfered with its relationship with the reinsurers.  According to Benfield, Aon

6

wrongfully interfered with that relationship when it collected the payments from St. Paul, deducted its commission, and forwarded the balance to the reinsurers. However, Benfield pled no facts demonstrating Benfield's relationship with the reinsurers. To the contrary, the facts alleged in its Amended Complaint demonstrate that once Benfield placed a treaty, St. Paul submitted payment to Benfield, and then Benfield forwarded payment to the reinsurer. Accordingly, the Amended Complaint cites facts of Benfield's relationship with St. Paul. Even if Benfield had pled facts demonstrating a business relationship with the reinsurers, it has still failed to plead any fact regarding Aon's actions other than Aon's collection of the payments and extraction of its commissions. Benfield has pled no facts relating to any actions Aon may have taken to procure St. Paul's decision to change brokers and thus there is no basis to determine whether it is plausible that Aon's actions were wrongful and without justification. That Aon collected the reinsurance payments from St. Paul, deducted a commission, and forwarded the remaining balance to the reinsurers does not, by itself, demonstrate that Aon acted wrongfully and without justification. Accordingly, Benfield's claim for tortious interference with prospective business relationship is dismissed.

### 3. Count Five—Unfair Competition

A claim of unfair competition is based on an underlying tort such as tortious interference with contract or prospective business relationship. <u>Midwest Sports Mktg., Inc. v. Hillerich & Bradsby of Can., Ltd.</u>, 552 N.W.2d 254, 267 (Minn. Ct. App. 1996). The face of the Amended Complaint does not reveal the tort on which Benfield bases its claim of unfair competition; however, in its memorandum Benfield argues the claim is based on the underlying tortious interference claims. Whether a claim of unfair competition survives a motion to dismiss or

motion for summary judgment depends on the resolution of the underlying tort. See Rehab. Specialists, Inc. v. Koering, 404 N.W.2d 301, 306 (Minn. Ct. App. 1987) (declining to grant summary judgment on unfair competition claim because of court's decision not to grant summary judgment as to underlying tort); see also Benfield, Inc., v. Moline, No. 04-3513, 2006 WL 452903, at *13 (D. Minn Feb. 22, 2006) (concluding that because underlying tort claims had been dismissed, unfair competition claim was dismissed).  Having dismissed both claims of tortious interference, Benfield's claim of unfair competition is also dismissed.

**C.      Unjust Enrichment and Conversion**

The resolution of Aon's motion to dismiss Benfield's claims of unjust enrichment and conversion, pivots on the point at which a broker earns its commission for the placement of the reinsurance treaties.  In Benfield v. Moline, 2006 WL 452903, District Judge Michael Davis, evaluated a similar situation on a motion for summary judgment.  In that case, Moline collected the commissions relating to several treaties placed by Benfield after several cedent insurers changed brokers mid-term.  Id. at *14.  In evaluating Benfield's claims of unjust enrichment and conversion, the court was required to determine whether broker commissions in the reinsurance context are earned at placement.  Id. at **13-14.  Neither party referenced or provided the court with a contract relating to the commissions and it was unclear whether there was a written agreement between the reinsurer and placing broker.  Id. at *14.  Without a contract to guide the court's determination, Judge Davis compared the reinsurance and insurance industry and concluded that because they were analogous, the general principles of the insurance industry applied in the reinsurance context.  Without the existence of a contract specifying otherwise, Judge Davis concluded that the "general rule for insurance brokerage commissions applies to the

8

reinsurance industry: generally, reinsurance brokerage commissions are earned at placement; if the client switches brokers partway through the insurance contract year, the initial broker is still entitled to those commissions until the treaty renewal period."

District Judge John Tunheim addressed a similar situation but declined to conclude, based on Judge Davis' decision in Benfield v. Moline, that the reinsurance industry is analogous to the insurance industry such that a general presumption exists that commission is earned at placement. Guy Carpenter & Co. v. Collins, No. 5-1623, 2006 WL 2502232 (D. Minn. Aug. 29, 2006). Instead, Judge Tunheim concluded that whether the reinsurance industry was similar to the insurance industry involved a fact question precluding summary judgment.

In the above cited cases, both judges had the benefit of a factual record developed through discovery. Here the Court is asked to addresses this issue on a motion to dismiss. In its Amended Complaint, Benfield has pled that it earned the commission at placement and that will be taken as true for the purposes of evaluating this motion. After discovery the Court will be better positioned to evaluate whether there is a triable fact issue on the timing of earning commissions.

**D.     Count Three—Unjust Enrichment**

To successfully assert a claim of unjust enrichment, a plaintiff must show that the defendant knowingly received something of value that it was not entitled to and that it would be unjust for the defendant to retain that benefit. Guiness Import Co. v. Mark VII Distribs., Inc., 153 F.3d 607, 613 (8th Cir. 1998). "An unjust enrichment claim does not lie merely because one party benefits from another's efforts or obligations; rather 'it must be shown that a party was unjustly enriched in the sense that the term unjustly could mean illegally or unlawfully.'"

9

Custom Design Studio v. Chloe, Inc., 584 N.W.2d 430, 433 (Minn. App. 1998) (quoting First Nat'l Bank of St. Paul v. Ramier, 311 N.W.2d 502, 504 (Minn. 1981)). Unjust may also mean that it would be morally wrong for the defendant to enrich itself at the expense of the plaintiff. Gallinger v. N. Star Hosp. Mut. Assur., Ltd., 64 F.3d 422, 426 (8th Cir. 1995).

Aon asserts that Benfield's claim of unjust enrichment cannot survive its motion to dismiss because Benfield pled no facts demonstrating how Aon's conduct was unjust. Aon contends that Benfield failed to set forth any allegation of wrongful, illegal, or morally reprehensible conduct by Aon. Benfield fails to address Aon's arguments regarding the facts alleged in its Amended Complaint. Rather, Benfield contends that it worked to place the treaties and thus earned its commission upon placement of those treaties such that Aon's retention of the commissions results in its unjust enrichment.

Assuming for the purposes of this motion that Benfield earned its commission at placement, then Aon's retention of any portion of those commissions might be wrongful and would unjustly enrich Aon. Accordingly, Benfield's claim of unjust enrichment is plausible on its face and survives Aon's motion to dismiss.

**E.    Count Four—Conversion**

To establish common law conversion the plaintiff must establish it (1) has a property interest, and (2) that the defendant deprived the plaintiff of that interest. Larson v. Archer-Daniels-Midland Co., 226 Minn. 315, 32 N.W.2d 649 (1948). "A plaintiff's lack of an enforceable interest in the subject property is a complete defense against conversion." Lassen v. First Bank Eden Prairie, 514 N.W.2d 831, 838 (Minn. Ct. App. 1994). "Wrongfully refusing to deliver property on demand by the owner constitutes conversion." Molenaar v. United Cattle

Co., 553 N.W.2d 424, 430-31 (Minn. Ct. App. 1996).

Aon contends that Count Four should be dismissed because Benfield does not have a property interest in the full value of the commissions. According to Aon, because the broker continues to perform work after placement, only a portion of the commission vested at placement. Aon asserts that because it was justified in retaining the commissions it earned through the work performed when it replaced Benfield, Benfield has failed to state a claim for conversion. Benfield asserts that the commissions were earned at placement. Further, it asserts that whatever work Aon performed may be considered in calculating damages to prevent Benfield from being unjustly enriched. However, Benfield is entitled to compensation it earned upon placement.

Taking as true the assertion that Benfield earned the commissions upon placement, Benfield had a property interest in the commissions. Accordingly, Benfield has set forth a claim for conversion that is plausible and survives Aon's motion to dismiss.

## IV.  CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1.  Defendant's Motion to Dismiss [Docket No. 26] is **GRANTED** as to Counts One, Two, and Five of Plaintiff's Amended Complaint [Docket No. 20];

2.  Defendant's Motion to Dismiss is **DENIED** as to Counts Three and Four.

BY THE COURT:


s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  January 8, 2008.